JOHN HARTLEY

52 BEACH STREET

PROVIDENCIALES

TURKS AND CAICOS ISLANDS

BRITISH WEST INDIES

12 July 2012

For the attention of the Clerk to Judge Cohn
United States District Court
Southern District of Florida
299 East Broward Boulevard #108
Fort Lauderdale, FL 33301

Dear Sir or Madam

<u>CASE 11-62037-CIV-COHN/SELTZER –</u>

<u>Defendant John Hartley's Response to Plaintiffs' Request for Admissions</u>

With the greatest respect to the Court, but without prejudice to my contentions that the Court has no jurisdiction over me and in any event that service of process has not been properly effected:

His Honor Judge Cohn knows I am a litigant in person. I was unaware that any failure by me to respond to the Plaintiffs' Request for Admissions might be disastrous.

I had no idea or indication from the Plaintiffs, who are persistently trying to take advantage of my acting in person, that this might be the case. Now that I have seen the Plaintiffs' application to obtain summary judgment over me on the basis that they can rely on deemed admissions, I realise my terrible error for which I apologise to the Court.

I have already submitted a detailed Defence (posted on 10 July 2012) denying the Plaintiffs' claims which I respectfully submit should preclude the Court granting a summary judgment in favour of the Plaintiffs.

In the event that the Court also requires a written response to the Plaintiffs' Request for Admissions, I respectfully now enclose a copy with this letter. I apologise for the fact it is in manuscript but I hope that it is helpful for the court to see my replies juxtaposed by the questions.

I hereby request the court's indulgence to grant me an extension of time to submit these responses.

I will be grateful if you will place them before Judge Cohn without delay.

Yours faithfully,

*[signature]*

John Hartley

cc. Loren Cohen Esq. by email (with enclosures)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-62037-CIV-COHN-SELTZER

EDWARD BURGER, AS TRUSTEE
OF THE 2009 HUBBARD FAMILY
TRUST, a New Mexico trust,
PRAEFECTUS CAPITAL, LLC,
a South Dakota limited liability
company, ALBERT ANGELO, JR.,
CRAIG ANGELO, ROBERT
MASTERSON, DAN MEADOWS,
and JERRY BAYLES,

    Plaintiffs,

v.

JOHN HARTLEY, JOHN A.
MATTERA, BRADFORD
VAN SICLEN, JOHN RAY
ARNOLD, PRAETORIAN G.
POWER II, LLC, a Delaware
limited liability company,
G. POWER II, a Delaware
corporation, FIRST AMERICAN
SERVICE TRANSMITTALS, INC.,
a Florida corporation, and PRAETORIAN
FUND, LTD., a British Virgin Islands
Corporation.

    Defendants.
_____/

*[Handwritten annotation: "John Hartley's responses inserted below to each question. JHartley 12 Feby 2012"]*

## **PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS TO JOHN HARTLEY**

Plaintiffs, Edward Burger, as Trustee of The 2009 Hubbard Family Trust, a New Mexico Trust ("Trust"), Praefectus Capital, LLC, a South Dakota limited liability company ("Praefectus"), Albert Angelo, Jr., Craig Angelo, Robert Masterson, Dan Meadows, and Jerry

CASE NO. 11-62037-CIV-COHN-SELTZER

Bayles (collectively "Investors"), pursuant to Rule 36 of the Federal Rules of Civil Procedure, requests John Hartley to admit to the following:

1. The following documents filed of record in the Court docket at Docket Entry ("DE") D.E. 42-1 and 42-2, are true and correct copies of Subscription Agreements faxed to First American Service Transmittals, Inc.,

   a. on or about October 11, 2010, by Dan Meadows (D.E. 42-1, pages 1-6 of 30); *[handwritten: JH HAD NOT SEEN ANY DOCUMENTS FAXED UNTIL THIS ACTION]*

   b. on or about October 27, 2010, by Edward Burger (D.E. 42-1, pages 7-12 of 30);

   c. on or about August 3, 2010, by Dan S. Meadows (D.E. 420-1, pages 13-18 of 30); *[handwritten: DITTO]*

   d. on or about October 4, 2010, by Elizabeth Evans, on behalf of Jerry Bayles (D.E. 42-1, pages 19-24 of 30); *[handwritten: DITTO / DITTO]*

   e. on or about November 18, 2010, by Elizabeth Evans for Praefectus Capital, LLC (D.E. 42-1 at pages 25-30 of 30); *[handwritten: DITTO]*

   f. on or about December 23, 2010, by Elizabeth Evans for Praefectus Capital, LLC (D.E. 42-2 at pages 1-6 of 29); *[handwritten: DITTO]*

   g. on or about February 11, 2011, by Elizabeth Evans for Craig Angelo and Alberto Angelo, Jr. (D.E. 42-2 at pages 7-13 of 29); *[handwritten: DITTO]*

   h. on or about February 11, 2011, by Elizabeth Evans for Robert Masterson (D.E. 42-2 at pages 18-23); *[handwritten: DITTO]*

   i. on or about August 17, 2010 by Jerry Bales (D.E. 42-2 at pages 24-29). *[handwritten: DITTO]*

2. The subscription documents filed of record at D.E. 42-1 and 42-2 are maintained by First American Service Transmittals, Inc. as business records in the regular course of business. *[handwritten: UNKNOWN TO JH]*

*[handwritten initials]*

2

CASE NO. 11-62037-CIV-COHN-SELTZER

3. The subscription documents filed of record at D.E. 42-1 and 42-2 are records of information transmitted to First American Service Transmittals, Inc. and received by First American Service Transmittals, Inc.   *UNKNOWN TO JH.*

4. The subscription documents filed of record at D.E. 42-1 and 42-2 were received by First American Service Transmittals, Inc. at, or near, the dates reflected on the fax brand on the documents.   *DITTO*

4. First American Service Transmittals, Inc. maintains copies of the subscription documents filed of record at D.E. 42-1 and 42-2, in the regular course of its business.   *DITTO*

5. On or about October 27, 2010, Dan Meadows wired $500,000 to First American Service Transmittals, Inc.'s bank account at BB&T bank, to purchase a membership interest in Praetorian G. Power II, LLC, to acquire indirect interests in Fisker Automotive Inc. through that membership interest.   *DITTO*

6. On or about November 4, 2010, the Hubbard Family Trust wired $500,000 to First American Service Transmittals, Inc.'s bank account at BB&T bank, to purchase a membership interest in Praetorian G. Power II, LLC, to acquire indirect interests in Fisker Automotive Inc. through that membership interest.   *DITTO*

7. On or about August 6, 2010, Dan S. Meadows wired $500,000 to First American Service Transmittals, Inc.'s bank account at BB&T bank, to purchase a membership interest in Praetorian G. Power II, LLC, to acquire indirect interests in Fisker Automotive Inc. through that membership interest.   *DITTO*

8. On or about August 18, 2010, Jerry Bayles wired $100,000 to First American Service Transmittals, Inc.'s bank account at BB&T bank, to purchase a membership interest in

3

*JGH*

Praetorian G. Power II, LLC, to acquire indirect interests in Fisker Automotive Inc. through that membership interest.

9. On or about November 18, 2010, Praefectus Capital, LLC wired $900,000 to First American Service Transmittals, Inc.'s bank account at BB&T bank, to purchase a membership interest in Praetorian G. Power II, LLC, to acquire indirect interests in Fisker Automotive Inc. through that membership interest. *[UNKNOWN TO JH]*

10. On or about December 23, 2010, Praefectus Capital, LLC wired $25,000 to First American Service Transmittals, Inc.'s bank account at BB&T bank, to purchase a membership interest in Praetorian G. Power II, LLC, to acquire indirect interests in Fisker Automotive Inc. through that membership interest. *[DITTO]*

11. On or about February 11, 2011, Craig Angelo wired $250,000 to First American Service Transmittals, Inc.'s bank account at BB&T bank, to purchase a membership interest in Praetorian G. Power II, LLC, to acquire indirect interests in Fisker Automotive Inc. through that membership interest. *[DITTO]*

12. On or about February 11, 2011, Robert Masterson wired $150,000 to First American Service Transmittals, Inc.'s bank account at BB&T bank, to purchase a membership interest in Praetorian G. Power II, LLC, to acquire indirect interests in Fisker Automotive Inc. through that membership interest. *[DITTO]*

13. On or about September 8, 2010, Jerry Bayles wired $900,000 to First American Service Transmittals, Inc.'s bank account at BB&T bank, to purchase a membership interest in Praetorian G. Power II, LLC, to acquire indirect interests in Fisker Automotive Inc. through that membership interest. *[DITTO]*

*[JH initials]*

14. On or about October 28, 2010, Jerry Bayles wired $250,000 to First American Service Transmittals, Inc.'s bank account at BB&T bank, to purchase a membership interest in Praetorian G. Power II, LLC, to acquire indirect interests in Fisker Automotive Inc. through that membership interest.

*[margin: UNKNOWN TO J.H.]*

15. On or about October 28, 2010, Jerry Bayles wired $250,000 to First American Service Transmittals, Inc.'s bank account at BB&T bank, to purchase a membership interest in Praetorian G. Power II, LLC, to acquire indirect interests in Fisker Automotive Inc. through that membership interest.

*[margin: DITTO]*

16. On or about December 29, 2010, Praefectus Capital, LLC wired $325,000 to First American Service Transmittals, Inc.'s bank account at BB&T bank, to purchase a membership interest in Praetorian G. Power II, LLC, to acquire indirect interests in Fisker Automotive Inc. through that membership interest.

*[margin: DITTO]*

17. On or about December 14, 2010, Praefectus Capital, LLC wired $125,000 to First American Service Transmittals, Inc.'s bank account at BB&T bank, to purchase a membership interest in Praetorian G. Power II, LLC, to acquire indirect interests in Fisker Automotive Inc. through that membership interest.

*[margin: DITTO]*

18. John A. Mattera was the advisory chairman of the board of Praetorian Fund, from July 1, 2010 through November 2011.

*[margin: DITTO]*

19. John Hartley was a director of the Praetorian Global Fund [Ltd. (BVI)] during the period from July 1, 2010 through November 2011.

*[margin: ADMITTED]*

20. John Hartley was a director of the Praetorian Services [Ltd., (TCI)] during the period from July 1, 2010 through November 2011.

*[margin: ADMITTED]*

*[signature/initials]*

5

CASE NO. 11-62037-CIV-COHN-SELTZER

21. John Hartley was a director of the [*The*] Praetorian Managers [*Ltd. (Cayman)*] during the period from July 1, 2010 through November 2011. — ADMITTED

22. The Private Placement Memorandum attached as Exhibit 1 (DE 1-1) to Plaintiffs' Complaint, and to their Amended Complaint (DE 19-1), was authored by Praetorian Global Fund. — DENIED

23. On or about January 11, 2011, Praetorian Services [*11a(TC1)*] received $50,000 from Rhino Island Capital Corp. — ADMITTED BUT NOT FOR HARTLEY OR FAMILY.

24. On or about February 14, 2011, Praetorian Services received $50,000 from Rhino Island Capital Corp. — DITTO.

25. John Hartley was a partner of Praetorian Global Fund, during the period from July 1, 2010 through November 2011. — DENIED

26. John Mattera was a partner of Praetorian Global Fund, during the period from July 1, 2010 through November 2011. — DITTO

27. Bradford van Siclen was partner of Praetorian Global Fund, during the period from July 1, 2010 through November 2011. — DITTO

28. John Hartley was a partner of Praetorian Services, during the period from July 1, 2010 through November 2011. — DITTO

29. John Mattera was a partner of Praetorian Service, during the period from July 1, 2010 through November 2011. — DITTO

30. Bradford van Siclen was a partner of Praetorian Services, during the period from July 1, 2010 through November 2011. — DITTO

31. John Hartley was a partner of Praetorian Managers, during the period from July 1, 2010 through November 2011. — DITTO

*[initials]*

32. John Mattera was a partner of ~~Praetorian Managers~~ The Praetorian Managers Ltd (Cayman) during the period from July 1, 2010 through November 2011. **DENIED**

33. Bradford van Siclen was a partner of ~~Praetorian Managers~~ The Praetorian Managers Ltd (Cayman) during the period from July 1, 2010 through November 2011. **DENIED**

34. The Private Placement Memorandum ~~authored by the Praetorian Global Fund~~ stated: **DENIED**

> "This Confidential Private Placement Memorandum (together with all exhibits and attachments, this "Memorandum") relates to **the offer and sale by G. Power II, a Delaware Corporation, ('the Company', 'we', or 'us') of shares (the 'Shares') of our Series A-1 Convertible Preferred Stock of Fisker Automotive Inc., ('Fisker') of up to $20,000,000 of shares (the 'Shares') of** our Series A-1 Convertible Preferred Stock (the 'Series A-1 Preferred'), at a purchase price $2.00 per share ('the offering'). **Each share is initially convertible into one share of our common stock ('Common Stock') in Fisker Automotive Inc.**"

35. The Private Placement Memorandum ~~authored by the Praetorian Global Fund~~ authored by the Praetorian Global Fund stated: **DENIED**

> All proceeds prior to their purchase of interests in the G Power LLC of the Series A-1 Preferred Stock offering shall be deposited into an escrow fund (the 'Main Escrow Fund') First American Transmittals via BB&T bank, Ft. Lauderdale, Florida, USA. At a closing, all purchasers of interests in G Power II, LLC, must execute all documents and take all such action as the escrow agent shall deem necessary or appropriate in connection with the purchase.

**DENIED**

36. The Private Placement Memorandum ~~authored by the Praetorian Global Fund~~ authored by The Praetorian Global Fund Ltd stated:

> All proceeds prior to their purchase of interests in the G Power LLC of the Series A-1 Preferred Stock offering shall be deposited into an escrow fund (the 'Main Escrow Fund') First American Transmittals via BB&T bank, Ft. Lauderdale, Florida, USA. At a closing, all purchasers of interests in G Power II, LLC, must

execute all documents and take all such action as the escrow agent shall deem necessary or appropriate in connection with the purchase.

37. Prior to each Plaintiffs' investment, each Plaintiffs was provided with a Private Placement Memorandum authored by the Praetorian Global Fund, which represented that G. Power already owned $20 million in shares of Fisker.

*[handwritten annotations: "WAIVED TO JSH", "The", "Id (Bvi)", "DENIED"]*

38. Prior to each Plaintiffs' investment, each Plaintiffs was provided with a Private Placement Memorandum authored by the Praetorian Global Fund, which represented that Plaintiffs' moneys would be held in escrow pending a closing.

*[handwritten annotations: "The", "will", "Denied"]*

39. The subscription documents authored by the Praetorian Global Fund, stated

*[handwritten annotation: "DENIED"]*

"Co-investment made into PRAETORIAN POWER II, LLC purchases interests entitling member to Preferred Shares of Fisker Automotive Inc., held by The Praetorian Fund, at $2.00...Praetorian has formed the LLC for the purpose of aggregating Co-Investors/Members' investments into the Company's Preferred Shares. Co-Investor/Members will purchase 'Investor Member Interests' in the LLC, which will in turn invest in Preferred at the initial and any subsequent closing of such investments. However, that the Managing Member will close the investment to additional members should the effective conversion price of the interests exceed $1.000 for each share held by the LLC of Fisker Automotive, Inc."

40. The subscription documents authored by The Praetorian Global Fund, in a section titled "Additional Information," stated that, after the investor's funds were received, "a closing" would occur, and that prior to any closing, the investor was permitted to review the "Transaction Documents," and to "rescind their offer in writing" should the "Transaction Documents" "differ materially and adversely (from an investor's point of view) from the versions described in the Transaction Documents initially made available for review, . . . ." [DE 23-1 through 7, Affidavits of Plaintiffs at ¶ 9, citing DE 19-2; Exhibit A, van Siclen Depo at pp. 130-143, 156-160, 174

*[handwritten annotation: "that", "DENIED"]*

41. Prior to each Plaintiffs' investment, each Plaintiff was provided with subscription documents, which represented that G. Power <u>already owned $20 million in shares of Fisker.</u>   *UNKNOWN TO JH*

42. Prior to each Plaintiffs' investment, each Plaintiff was provided with subscription documents, which represented that G. Power <u>already owned $20 million in shares of Fisker.</u>   *DITTO*

43. In early January 2011, John Hartley had dinner with Dee Hubbard and Bradford van Siclen in the Turks and Caicos Islands.   *ADMITTED*

44. In early January 2011, at the dinner with Dee Hubbard and Bradford van Siclen, John Hartley told Dee Hubbard that the Fisker shares purchased by the Hubbard Family Trust came from Mattera, and that the shares had already been deposited by Mattera with Praetorian G. Power II, LLC.   *DENIED*

45. In early January 2011, at the dinner with Dee Hubbard and Bradford van Siclen, John Hartley told Dee Hubbard that The Praetorian Global Fund [Ltd] was being started.   *ADMITTED*

46. In early January 2011, at the dinner with Dee Hubbard and Bradford van Siclen, John Hartley told Dee Hubbard that The Praetorian Global Fund [Ltd] would be started with stocks from Mattera's personal portfolio, *(and that The Praetorian Global Fund would include additional Fisker shares, as well as stocks Mattera held in Groupon and other companies.)*   *DENIED*

47. In early January 2011, at the dinner with Dee Hubbard and Bradford van Siclen, John Hartley proposed to Dee Hubbard that the Hubbard Family Trust buy additional Mattera Fisker shares.   *DENIED*

48. John Hartley never confirmed with Fisker, at any time, whether Praetorian G. Power II, LLC, owned Fisker shares.   *ADMITTED*

49. The Praetorian Global Fund [Ltd] never confirmed with Fisker, at any time, whether Praetorian G. Power II, LLC owned Fisker shares.   *ADMITTED*

*JH*

9

CASE NO. 11-62037-CIV-COHN-SELTZER

50. Praetorian Global Fund never confirmed with Fisker, at any time, whether John Mattera owned Fisker shares [UNKNOWN TO JH]

51. In May 2011, Ed Burger sent John Hartley an email regarding when the transaction to acquire the Fisker shares would close. [ADMITED]

52. Burger copied John Mattera and Elizabeth Evans with this email. [ADMITTED]

53. On May 17, 2011, John Hartley sent the email attached as Exhibit 3 to Plaintiff's Complaint (DE 1-3) and Amended Complaint (DE 19-3) to Ed Burger, John Mattera and Elizabeth Evans. [ADMITTED]

54. In the email John Hartley sent to Ed Burger described in the previous paragraph, John Hartley stated, "We have this in hand through the Gpower structure on the basis which John M has outlined to you." [ADMITTED]

55. The "We" that John Hartley referred to in the email described in paragraph 54 included John Mattera. [DENIED]

56. The "We" that John Hartley referred to in the email described in paragraph 54 included Bradford van Siclen. [ADMITTED]

57. On May 25, 2011, Ed Burger sent the email attached as Exhibit 4 to Plaintiff's Complaint (DE 1-4) and Amended Complaint (DE 19-4) to John Hartley, John Mattera and Elizabeth Evans. [ADMITTED]

58. On May 26, 2011, John Hartley sent the email attached as Exhibit 4 to Plaintiff's Complaint (DE 1-4) and Amended Complaint (DE 19-4) to Ed Burger, John Mattera and Elizabeth Evans. [ADMITTED]

59. In the email John Hartley sent to Burger described in the previous paragraph 58, John Hartley stated, [see over page]

10

> We are still working on structural issues with our depositary and professional advisors. The licenses we need in the BVI and Cayman were issued to Praetorian Managers Ltd., and Praetorian Global Fund Ltd a couple of months ago...
>
> Your ownership documents with supportive documentation will be issued to you no later than August 1, 2011.
>
> We will of course keep you informed of substantive developments at both Praetorian and Gpower.

*[handwritten: ADMITTED Refer to ownership of PGF Ltd shares]*

60. The ownership documents John Hartley were referring to in the email described in paragraphs 58 and 59 above, were documents reflecting ownership of Fisker shares. *[DENIED]*

61. Ed Burger never purchased an ownership interest in [The] Praetorian Global Fund Ltd (BVI). *[ADMITTED]*

62. The Hubbard Family Trust never purchased an ownership interest in [The] Praetorian Global Fund. Ltd (BVI) *[ADMITTED]*

63. Dee Hubbard never purchased an ownership interest in [The] Praetorian Global Fund Ltd. *[ADMITTED]*

64. Ed Burger never purchased an ownership interest in [The] Praetorian Managers. Ltd (BVI) *[ADMITTED]*

65. The Hubbard Family Trust never purchased an ownership interest in [the] Praetorian Managers. Ltd (BVI) *[ADMITTED]*

66. Dee Hubbard never purchased an ownership interest in [The] Praetorian Managers. Ltd *[PITTO]*

67. Praetorian G. Power II, LLC never owned any Fisker shares. *[UNKNOWN]*

68. [The] Praetorian Global Fund Ltd never owned any Fisker shares. *[ADMITTED]*

69. [The] Praetorian Managers Ltd never owned any Fisker shares. *[ADMITTED]*

70. [The] Praetorian Services Ltd never owned any Fisker shares. *[ADMITTED]*

71. John Hartley's wife is an [EMPLOYED] attorney at Saunders and Company[.] NOT PARTNER *[ADMITTED]*

72. On or about October 20, 2010, Saunders and Company received $9,000 from Rhino Island Capital Corp. *[ADMITTED BUT NOT FOR HARTLEY OR FAMILY. PROF FEES FOR LARRY CAROE]*

11

*[JH]*

CASE NO. 11-62037-CIV-COHN-SELTZER

73. Between August 1, 2010 and November 1, 2010, John Hartley never spoke to John Arnold about whether Plaintiffs' moneys were being held in escrow. **TRUE**

74. Between August 1, 2010 and November 1, 2010, John Hartley never spoke to John Arnold about whether First American Service Transmittals, Inc. would agree to hold Plaintiffs' moneys in escrow. **TRUE**

75. In connection with The Praetorian Global Fund, John Hartley's partners included Bradford van Siclen and John Mattera. **DENIED**

76. The Praetorian Global Fund was to be capitalized from the proceeds of the sale of shares in Fisker, Groupon, and Facebook, by the G. Power II entities. **DENIED**

77. The Praetorian Global Fund was to be capitalized from the proceeds of the sale of shares held by John Mattera. **DENIED**

78. Prior to entry into the business arrangement with John Mattera with respect to the Praetorian Global Fund, John Hartley was aware of the consent judgment entered against Mattera in connection with the Prime Time matter. **DENIED**

79. As a result of the consent judgment entered against Mattera in connection with the Prime Time matter, KPMG advised John Hartley that John Mattera could not serve as an officer or director of The Praetorian Global Fund. **LTD (BVI)** **ADMITTED**

80. Between July 31, 2010 and November 31, 2011, John Hartley came to Florida on two occasions to meet with John Mattera and investors interested in the Praetorian Global Fund. **ADMITTED / DENIED**

81. Between July 31, 2010 and November 31, 2011, John Hartley was aware that John Mattera was soliciting investors in the United States for investments to ultimately lead to capital for The Praetorian Global Fund. **DENIED**

*JGH*

82. Between July 31, 2010 and November 31, 2011, John Hartley was aware that The Praetorian Managers [Ltd], Praetorian Services [Ltd], and The Praetorian Global Fund [Ltd] did not maintain escrow accounts for investor moneys. **ADMITTED**

83. Between July 31, 2010 and November 31, 2011, John Hartley was aware that The Praetorian Managers [Ltd], Praetorian Services [Ltd], and The Praetorian Global Fund [Ltd] did not maintain escrow accounts for Plaintiffs' moneys. **ADMITTED**

84. Between July 31, 2010 and November 31, 2011, John Hartley was aware that The Praetorian Managers [Ltd], Praetorian Services [Ltd], and The Praetorian Global Fund [Ltd (BVI)] did not maintain accounts for investor moneys. **ADMITTED**

85. Between July 31, 2010 and November 31, 2011, John Hartley was aware that The Praetorian Managers, Praetorian Services [Ltd], and The Praetorian Global Fund [Ltd (BVI)] did not maintain accounts for Plaintiffs' moneys. **ADMITTED**

86. Bradford van Siclen was a director of The Praetorian Global Fund [Ltd (BVI)] during the period from July 1, 2010 through November 2011. **ADMITTED**

87. Bradford van Siclen was a director of the Praetorian Services [Ltd (TCI)] during the period from July 1, 2010 through November 2011. **Admitted**

88 Bradford van Siclen was a director of the Praetorian Managers [Ltd] during the period from July 1, 2010 through November 2011. **ADMITTED, NOT CERTAIN**

89. The documents attached hereto as Exhibit A are true and correct copies of banking and financial records of Praetorian Services [Ltd]. **ADMITTED**

90. The documents attached hereto as Exhibit A are maintained by Praetorian Services as business records in the regular course of business. **ADMITTED**

13

CASE NO. 11-62037-CIV-COHN-SELTZER

91. The documents attached hereto as Exhibit A are records of information transmitted to Praetorian Services and were received by Praetorian Services Ltd. ADMITTED

92. The documents attached hereto as Exhibit A were received by Praetorian Services Ltd at, or near, the dates reflected on the documents. ADMITTED

93. Praetorian Services maintains copies of the documents attached as Exhibit A in the regular course of its business. ADMITTED

94. The transcripts of the depositions of the following witnesses accurately reflect the questions and answers of said witnesses:

    A) Fisker's General Counsel;

    B) Corporate Representative of BB&T Bank;

    C) Records Custodian of BB&T Bank;

    D) Corporate Representative of JPM Chase;

    E) Records Custodian of JPM Chase;

    F) Corporate Representative of JPM Chase;

    G) Bradford Van Siclen;

    H) John Arnold

UNKNOWN DEPOSITIONS IN FULL NOT SEE. PASSAGES THAT HAVE CONTAIN UNTRUTHS

95. When John Hartley spoke to Dee Hubbard on January 11, 2010, John Hartley had not spoken to John Arnold concerning whether The Hubbard Trust's or Praefectus Capital's moneys were still being held in the escrow accounts.

96. When John Hartley sent the email to Ed Burger on May 26, 2011, described above in paragraphs 58 and 59, John Hartley had not spoken to John Arnold concerning whether The Hubbard Trust's or Praefectus Capital's moneys were still being held in the escrow account.

ADMITTED DID NOT KNOW ABOUT ESCROW OR ARNOLD

97. Between July 1, 2010 and November 30, 2011, John Hartley was aware that Praetorian G. Power II, LLC was a Delaware Limited Liability Company.

DENIED

98. Between July 1, 2010 and November 30, 2011, John Hartley was aware that Praetorian G. Power II, LLC was a United States based Limited Liability Company.

Ditto

99. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the G. Power entities were Delaware limited liability companies.

Ditto

100. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the G. Power entities were United States based limited liability companies.

Ditto

101. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the investor escrow account for Praetorian G. Power II, LLC was being maintained in Florida.

Ditto

102. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the investor escrow account for the Hubbard Family Trust's investment in Praetorian G. Power II, LLC was being maintained in Florida.

Ditto

103. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the escrow account for the Plaintiffs' investment in Praetorian G. Power II, LLC was being maintained in Florida.

Ditto

104. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the escrow account for investor investments in Fisker were being maintained in Florida.

Ditto

105. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the escrow account for the Hubbard Family Trust's investment in Fisker was being maintained in Florida.

Ditto

*[initials]*

CASE NO. 11-62037-CIV-COHN-SELTZER

106. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the escrow account for the Praefectus Capital's investment in Fisker was being maintained in Florida. **DENIED**

107. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the escrow account for the Plaintiffs' investments in Fisker was being maintained in Florida. **DENIED**

108. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the escrow accounts for the investors' investments in the G. Power entities were being maintained in Florida. **DENIED**

109. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the escrow account for the investors' investments in Praetorian G. Power II, LLC was being maintained with First American Service Transmittals, Inc. and John Arnold as escrow agents. **DITTO**

109. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the escrow account for the Hubbard Family Trust's investments in Praetorian G. Power II, LLC was being maintained with First American Service Transmittals, Inc. and John Arnold as escrow agents. **DITTO**

110. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the escrow account for the Praefectus Capital, LLC's investments in Praetorian G. Power II, LLC was being maintained with First American Service Transmittals, Inc. and John Arnold as escrow agents. **DITTO**

111. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the escrow account for the Plaintiffs' investments in Praetorian G. Power II, LLC was being maintained with First American Service Transmittals, Inc. and John Arnold as escrow agents. **DITTO**

*[initials]*

CASE NO. 11-62037-CIV-COHN-SELTZER

112. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the escrow account for the investors' investments in Fisker was being maintained with First American Service Transmittals, Inc. and John Arnold as escrow agents. *DENIED*

113. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the escrow account for the Hubbard Family Trust's investments in Fisker was being maintained with First American Service Transmittals, Inc. and John Arnold as escrow agents. *DITTO*

114. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the escrow account for the Praefectus Capital, LLC's investments in Fisker was being maintained with First American Service Transmittals, Inc. and John Arnold as escrow agents. *DITTO*

115. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the escrow account for the Plaintiffs' investments in Fisker was being maintained with First American Service Transmittals, Inc. and John Arnold as escrow agents. *DITTO*

116. Between July 1, 2010 and November 30, 2011, John Hartley was aware that the escrow accounts for the investors' investments in the G. Power entities were being maintained with First American Service Transmittals, Inc. and John Arnold as escrow agents. *DITTO.*

Respectfully Submitted,

MITRANI, RYNOR,
 ADAMSKY & TOLAND, P.A.
301 Arthur Godfrey Road, Penthouse
Miami Beach, Florida 33140
Tel.: 305/358-0050
Fax: 305/358-0550

By:/s/Isaac J. Mitrani
 Isaac J. Mitrani
 Florida Bar No. 348538
 /s/Loren H. Cohen
 Loren H. Cohen
 Florida Bar No. 303879
 Attorneys for Plaintiff

17

THIS IS THE FINAL PAGE.