UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  11-62037-CIV-COHN/SELTZER

EDWARD BURGER, AS TRUSTEE
OF THE 2009 HUBBARD FAMILY
TRUST, a New Mexico trust, et al.,

      Plaintiffs,

vs.

JOHN HARTLEY, et al.,

      Defendants.

_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT JOHN HARTLEY; DENYING DEFENDANT JOHN HARTLEY'S CROSS MOTION FOR DISMISSAL OF AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for Summary Judgment

as to Defendant John Hartley [DE 184] ("Motion for Summary Judgment") and

Defendant Hartley's Cross Motion for Dismissal of the Amended Complaint [DE 209][1]

("Motion to Dismiss") (collectively "Motions").  The Court has carefully considered the

Motions, Plaintiffs' Reply In Support of Their Motion for Summary Judgment as to

Defendant John Hartley [DE 200], Plaintiffs' Response to Defendant Hartley's Counter

Motion for Dismissal of the Amended Complaint [DE 201], "Defendant Hartley's

Response to Plaintiffs' Motion to Strike Defendant Hartley's Affidavit,[2] Plaintiffs' Motion

for Leave to Reply, and Plaintiffs' Reply to Defendant Hartley's Contention that Plaintiffs

_____

[1]     Additionally, Mr. Hartley's Motion to Dismiss responds to Plaintiffs' Motion for Summary Judgment and also appears at DE 208.

[2]     In a separately entered order, the Court grants Plaintiffs' Motion to Strike the Untimely Affidavit of Mr. Hartley for failure to comply with Local Rule 7.1(c).

Have No Cause of Action Against Him and Their Claim is Doomed to Fail" [DE 215],

which the Court construes as a reply in support of Mr. Hartley's Motion to Dismiss, the

record in the case, and is otherwise advised in the premises.

I. BACKGROUND

On September 16, 2011, Plaintiffs Edward Burger, as trustee of the 2009

Hubbard Family Trust, Praefectus Capital, LLC, Albert Angelo, Jr., Craig Angelo, Robert

Masterson, Dan Meadows, and Jerry Bayles (collectively "Plaintiffs") filed suit against

Defendants John Hartley ("Hartley"), John A. Mattera ("Mattera"), Bradford van Siclen

("van Siclen"), John Ray Arnold ("Arnold"), Praetorian G. Power II, LLC ("Praetorian"),

G. Power II ("G. Power"), First American Service Transmittals, Inc. ("FAST"), and

Praetorian Fund, Ltd. ("Praetorian Fund") (collectively "Defendants").  Complaint [DE

1][3].  Plaintiffs filed an Amended Complaint on October 28, 2011.  Amended Complaint

[DE 19].  In the Amended Complaint, Plaintiffs bring suit under Section 10(b) of the

Securities and Exchange Act of 1934 for rescission, and alternatively, to recover

substantial damages from Defendants related to $4.525 million Plaintiffs invested to

acquire shares in Praetorian and/or G. Power, based on false representations that such

interests would provide indirect ownership of Series A Preferred shares in Fisker

Automotive Inc. ("Fisker").  Am. Compl. ¶ 1.  After making the investment, Plaintiffs

never received the closing documents reflecting their shares in Praetorian.  Id.  Plaintiffs

_____

[3]        The only Defendants remaining in this action are Mr. Hartley, Praetorian,
G. Power, and Praetorian Fund.  Defendants Praetorian, G. Power, and Praetorian
Fund have had a clerk's default entered against them [DE 84] and an unopposed
motion for entry of default judgment as to these defendants is currently pending before
the Court.  See DE 182.

later learned that Mattera, Praetorian, and G. Power did not own any shares in Fisker.
Id.  Plaintiffs allege that Defendants Arnold and FAST, the escrow agents chosen by
the other Defendants, participated in these securities violations by disbursing Plaintiffs'
moneys, without Plaintiffs' permission, to some or all of the other Defendants, while
Plaintiffs were waiting for the closing.  Id.

The Amended Complaint alleges that Mr. Hartley was a founding partner and
member of Defendant Praetorian Fund, id. ¶ 22, and that along with Defendants
Mattera, van Siclen, G. Power, and Praetorian Fund, "caused various documents to be
prepared to promote the sale of shares in the LLC entity which would own the Fisker
shares." Id. ¶ 42.  Plaintiffs allege that a Private Placement Memorandum and
subscription documents provided to the Plaintiffs prior to their investments "represented
that G. Power already owned $20 million in shares of Fisker." Id. ¶¶ 43, 48 (emphasis
in original).  Plaintiffs contend that as a director of Defendant Praetorian Fund, Mr.
Hartley made misrepresentations contained in these documents and he participated in
the scheme to deceive the Plaintiffs.  Id. ¶ 49.  Furthermore, the Amended Complaint
contends that in early January 2011, Mr. Hartley and van Siclen met with a trustee of
the Plaintiff 2009 Hubbard Family Trust, and discussed the investment, representing
what a great investment it was.  Id. ¶¶ 83, 84.  Plaintiffs allege that Mr. Hartley
continued to cover up the fact that G. Power did not own any shares in Fisker.  Id. ¶¶
109-10.  Plaintiffs bring claims against Mr. Hartley for violation of Section 10(b) and
10b(5)(a), (b), and (c) of the Securities Exchange Act of 1934 (Count I); fraud
(rescission) (Count II); fraud (damages) (Count III); conspiracy (Count IX); and civil theft
in violation of Florida Statute § 772.11 (Count X).  Plaintiffs have now moved for

summary judgment against Mr. Hartley.  Mr. Hartley opposes the Motion for Summary Judgment and has cross-moved to dismiss the Amended Complaint.

## II. DISCUSSION

### A. Legal Standard.

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must demonstrate a lack of evidence supporting the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

As long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough

4

of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

## B. Personal Jurisdiction.

Before addressing the substance of the Motion for Summary Judgment, the Court must first determine whether this Court has personal jurisdiction over Mr. Hartley. In his Motion to Dismiss, which also serves as his response to Plaintiffs' Motion for Summary Judgment, Mr. Hartley has written, as he has on all his pleadings in this matter: "[w]ithout prejudice to my contentions that the Court has no jurisdiction over me and in any event that service has not been properly effected." Motion to Dismiss at 1. As the Court discussed in its April 16, 2012 Order Denying Motion to Reset Deadlines, Request for Status Conference and Setting Deadline for Plaintiffs to Move for Default Against Defendant John Hartley [DE 133] ("April 16, 2012 Order"), the Turks and Caicos is a signatory to the Hague Convention and it appears to the Court that Mr. Hartley was served in accordance with the Hague Convention. April 16, 2012 Order at 2. Thus, the Court must only resolve whether it has personal jurisdiction over Mr. Hartley.

The United States Supreme Court has held that "[b]ecause the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982). Moreover, "under Rule 12(h), Federal Rules of Civil Procedure, '[a] defense of lack of jurisdiction over the person ... is waived' if not timely raised in the

answer or a responsive pleading." Id. at 705.  Here, Mr. Hartley asserted in his first

responsive pleading in this matter that he was responding to the Complaint "without

prejudice to any jurisdictional defences that I may have."  Answer [DE 152] ¶ 1.

Construing Mr. Hartley's *pro se* Answer liberally as the Court must, the Court declines

to find that Mr. Hartley has waived the issue of the Court's personal jurisdiction over him

and consented to jurisdiction.  Nonetheless, for the reasons, discussed below, the

Court finds that Mr. Hartley is properly subject to the personal jurisdiction of this Court.

The Florida Supreme Court has held that to determine whether a court has

personal jurisdiction over a nonresident defendant, the court must first determine

whether the complaint alleges sufficient jurisdictional facts to bring the action within the

Florida Long Arm Statute, Fla. Stat. § 48.193.  Venetian Salami Co. v. Parthenais, 554

So. 2d 499, 502 (Fla. 1989).  Next, the Court must analyze whether sufficient "minimum

contacts" exist to satisfy due process.  Id.  The Florida Long Arm Statute, Fla.  Stat. §

48.193, provides that "[a]ny person, whether or not a citizen or resident of this state,

who personally or through an agent does any of the acts enumerated in this subsection

thereby submits himself or herself and, if he or she is a natural person, his or her

personal representative to the jurisdiction of the courts of this state for any cause of

action arising from the doing of any of the" acts enumerated in the statute.  Fla. Stat. §

48.193(1).  Some of the acts which subject a nonresident to personal jurisdiction

include: (a) conducting a business or business venture in Florida; (b) committing a

tortious act within Florida; and (g) breaching a contract within Florida.  Fla. Stat. §

48.193(1)(a), (b), (g).

To determine whether the nonresident has committed a tortious act within Florida, courts analyze "whether the tort, as alleged, occurred in Florida." NHB Advisors, Inc. v. Czyzyk, – So. 3d –, No. 4D11-4500, 2012 WL 3587216, at *3 (Fla. Dist. Ct. App. Aug. 22, 2012) (citing Hunt v. Cornerstone Golf, Inc., 949 So. 2d 228, 230 (Fla. Dist. Ct. App. 2007)).  In this inquiry, the issue is  "whether the nonresident defendant committed a substantial aspect of the alleged tort in Florida," but the defendant need not be physically present within the state to meet this requirement.  Id. (internal citations and quotation marks omitted).  In a recent opinion, NHB Advisors, Inc. v. Czyzyk, the Fourth District Court of Appeal observed that "if a plaintiff has successfully alleged a cause of action for conspiracy among the defendants to commit tortious acts in Florida in furtherance of that conspiracy, then all of the conspirators are subject to the jurisdiction of Florida through its long-arm statute."  Id.  In Czyzyk, the court found that because the amended complaint contained "a colorable claim of the existence of a conspiracy" and that the defendant was part of that conspiracy, he was subject to the Florida Long Arm Statute for tortious acts committed within Florida by other members of the conspiracy.  Id. at *4.

Here, the Amended Complaint brings a conspiracy count against all Defendants. Am. Compl.  ¶¶ 264-269.  Plaintiffs assert that Mr. Hartley "did business in the United States and Florida through his involvement in the transaction and committed the below-referenced tortious acts in Florida."  Id. ¶ 22.[4]   Specifically, the Amended Complaint

---

[4]      More generally, the Amended Complaint alleges that personal jurisdiction is proper due to Fla. Stat. § 48.193(1)(a) (conducting a business), (b) (tortious conduct), and (g) (breach of contract).  Am. Compl. ¶ 11.

charges that Mr. Hartley, along with Defendants Mattera, van Siclen, G. Power, and Praetorian Fund, drafted the confidential private placement memorandum and subscription documents that induced Plaintiffs' investments.  Am. Compl. ¶¶ 42, 49. Plaintiffs also contend that Mr. Hartley "covered up Defendants' wrongdoing and claims that the Fisker Series A Preferred shares were owned by G. Power (or Praetorian) already," id. ¶ 109, including representing to one plaintiff via email that ownership documents would be issued as of August 1, 2011.  Id. ¶ 112.   Furthermore, the Amended Complaint alleges that in early January 2011, Mr. Hartley and van Siclen personally met with a trustee of the 2009 Hubbard Family Trust, and discussed the investment, representing what a great investment it was.  Id. ¶¶ 83, 84.[5]  Thus, even if the allegations of the Amended Complaint are insufficient to establish that Mr. Hartley himself operated a business or himself caused tortious conduct within Florida, the Court still has personal jurisdiction over him based on Plaintiffs' well-plead allegations that he participated in a conspiracy with other defendants who did commit tortious acts within Florida.[6]  See Czyzyk, 2012 WL 3587216, at *4; see also United Techs. Corp. v. Mazer, 556 F.3d 1260, 1281-82 (11th Cir. 2009) ("Florida courts have held that the state's long-arm statute can support personal jurisdiction over any alleged conspirator where

---

[5]      Although this meeting is alleged to have occurred in the Turks and Caicos, the Amended Complaint is clear that the purpose of the meeting was to convince the trustee of the wisdom of the Trust's $500,000 investment and to take "no action to protect its interest."  Am. Compl. ¶¶ 83-88.

[6]      Specifically, Plaintiffs have alleged that "[m]any of the acts or omissions occurred in this District.  Plaintiffs wired the escrowed funds for the purchase of their shares/membership interests to a Fort Lauderdale based escrow agent, who was supposed to close the transaction. . . . Insofar as the moneys were disbursed, a conversion of Plaintiffs' funds occurred in this District."  Am. Compl. ¶ 12.

8

any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida.").

Even if the Court does not have personal jurisdiction over Mr. Hartley via the Florida Long Arm Statute, the Court still has personal jurisdiction by virtue of Federal Rule of Civil Procedure 4(k)(2).  Federal Rule of Civil Procedure 4(k)(2) provides that: "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over the defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."  Fed. R. Civ. P. 4(k)(2).  The Eleventh Circuit has stated that: "[r]ule 4(k)(2) . . . sanctions personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law but without sufficient contacts to satisfy the . . . long-arm statute of any particular state."  SEC v. Carrillo, 115 F.3d 1540, 1543-44 (11th Cir. 1997) (quoting World Tanker Carriers Corp. v. M/V Ya Mawlaya, 99 F.3d 717, 720 (5th Cir. 1996)).

In Carrillo, where as here the claim against the defendants was premised upon a violation of federal securities laws "which provide for worldwide service of process," the Eleventh Circuit analyzed the defendants' minimum contacts with the United States as a whole.  99 F.3d at 1544.  The Eleventh Circuit found that a Costa Rican defendant's minimum contacts with the United States were sufficiently related to the cause of action because "each of the contacts was a step by which the allegedly

9

fraudulent scheme was carried out." Id.  These contacts included (1) placing advertisements and arranging for articles concerning the securities to be placed in magazines; (2) mailing offering materials and application forms to the United States; (3) maintaining bank accounts in Miami to receive money from investors; and (4) mailing at least one stock certificate to a United States investor.  Id.  The court also concluded that the defendant "purposely availed itself of the privileges and benefits of conducting its activities in the forum because the airline advertisements and articles were reasonably calculated to reach the forum" and the defendant maintained bank accounts in the United States.  Id. at 1545, 1546.  The defendant also "could reasonably have expected to be haled into court in this country because it deliberately set about to sell its unregistered securities to United States residents."  Id. at 1546.  Finally, the Eleventh Circuit concluded that fair play and substantial justice weighed in favor of personal jurisdiction because "modern methods of transportation and communication" reduced any burden on the defendant from litigating in the United States and the Plaintiff, SEC, had a substantial interest in litigating the case in this forum because it had "no other means of obtaining relief."  Id. at 1547.

Here, Plaintiffs' primary claim is also predicated upon a violation of Section 10(b) of the Securities Exchange Act of 1934.  See, e.g., Am. Comp. ¶ 1.  Thus, the requirement that the claim arise under federal law is met.  Fed. R. Civ. P. 4(k)(2).  Mr. Hartley, like the defendants in Carrillo, is alleged to have participated in the drafting of the confidential private placement memo and subscription documents which induced the Plaintiffs' investments.  Am. Compl. ¶¶ 42, 49.  Mr. Hartley is also alleged to have been a founding partner and director of Defendant Praetorian Fund.  Id. ¶ 22.  After at

least one Plaintiff wired funds to the escrow agent, located in Florida, Mr. Hartley, along with van Siclen, is alleged to have met with a co-trustee of the 2009 Hubbard Family Trust wherein he emphasized what a wonderful investment it was.  Id. ¶¶ 83-88.  Mr. Hartley is also alleged to have made repeated representations to the Plaintiffs that the Fisker shares were owned by G. Power.  Id. ¶¶ 109, 112.  These specific allegations coupled with the allegations of conspiracy regarding Mr. Hartley and the other Defendants is sufficient for the Court to conclude that Mr. Hartley has sufficient minimum contacts with the United States as a whole to justify personal jurisdiction. Accordingly, the Court rejects any assertion by Mr. Hartley that the Court is without jurisdiction over him.

## C. Request for Admissions.

In his Motion to Dismiss, Mr. Hartley objects to Plaintiffs' reliance on his failure to respond to their First Request for Admissions in support of their Motion for Summary Judgment.  Motion to Dismiss ¶ 12.  Mr. Hartley asserts that he did not submit timely responses to the First Request for Admissions because "he was unaware of their importance."  Id.  Additionally, Mr. Hartley submitted a letter dated July 12, 2012 to the Court which attaches his response to Plaintiffs' First Request for Admissions in which he states that he "was unaware that any failure by [him] to respond to the Plaintiffs' Request for Admissions might be disastrous."  Defendant John Hartley's Response to Plaintiffs' Request for Admissions [DE 199] at 1.

The Request For Admissions Plaintiffs served on Mr. Hartley state that they were served in accordance of Federal Rule of Civil Procedure 36.  Plaintiffs' First Request for

11

Admissions, Exhibit C to Plaintiffs' Statement of Material Facts [DE 185-3] at 3

("Request For Admissions").   If Mr. Hartley had looked up this rule when he received

the Request For Admissions, he would have learned that "[a] matter is admitted unless,

within 30 days after being served, the party to whom the request is directed serves on

the requesting party a written answer or objection addressed to the matter and signed

by the party or its attorney."  Fed. R. Civ. P. 36(a)(3).  Mr. Hartley affirmatively chose

not to respond to the Request For Admissions, only belatedly responding when he

realized their "importance."  See Motion to Dismiss at 3 ¶ 12.  The Court notes that the

admissions are not the sole basis underlying Plaintiffs' Motion for Summary Judgment,

but rather are cumulative of other evidence adduced by the Plaintiffs.[7]  Accordingly, the

Court finds that Mr. Hartley has failed to demonstrate good cause to have the

admissions withdrawn or amended pursuant to Federal Rule of Civil Procedure 36(b).[8]

---

[7]        Courts in other districts "have been reluctant to award summary judgment on the basis of a pro se party's default on requests for admissions on the grounds that such a party may not have understood the effect of failure to respond to the requests." United States v. Renfrow, No. 5:07-CV-117-FL, 2009 WL 903202, at *3-4  (E.D.N.C. Jan. 26, 2009) (citing Jones v. Jack Henry & Assocs., Inc., Civ. No. 3:06cv428, 2007 WL 4226083, at *2 (W.D.N.C. Nov. 30, 2007) (declining to deem unanswered requests admitted where there was no evidence in the record that pro se plaintiff was ever notified of the consequences of failing to respond); United States v. Turk, 139 F.R.D. 615, 618 (D. Md.1991) (court declined to grant summary judgment against a pro se defendant based solely upon failure to answer requests for admissions (emphasis added)); In re Savage, 303 B.R. 766, 773 (Bankr. D. Md. 2003) ("Federal Rule of Civil Procedure 36 was not intended to be used as a technical weapon to defeat the rights of pro se litigants to have their cases fairly judged on the merits.")). Here, the Court does not grant summary judgment based solely on the deemed admissions so these cases are unavailing.

[8]        The Court also notes that Mr. Hartley never filed a motion to amend or withdraw his admissions as required by Federal Rule of Civil Procedure 36(b).

### D. Plaintiffs' Allegations that Hartley was Mattera and van Siclen's Partner.

Plaintiffs' claims against Mr. Hartley are premised, at least, in part on their allegation that he was involved in a partnership with Defendants Mattera and van Siclen.  See Motion for Summary Judgment at 10-13.  Mr. Hartley denies that he was involved in a partnership with any of the other Defendants.  Motion to Dismiss at 2 ¶ 2, 6 ¶ 26.  Mr. Hartley contends that he was never a member of any partnership, but instead "acted and conducted himself as a director and officer of the Praetorian Global Fund, Ltd., a British Virgin Islands company or the Praetorian Managers, Ltd., a Caymans Islands company or Praetorian Services Ltd. A Turks and Caicos Islands company."  Id. at 6 ¶ 28.  Accordingly, the Court must first address whether Plaintiffs are entitled to summary judgment on their allegation that Mr. Hartley was involved in a partnership with Defendants Mattera and van Siclen.

Plaintiffs contend that "[a]lthough Hartley, van Siclen and Mattera used various entities, incorporated in different countries to carry out different aspects of the business. . ., the nature of their business was still a partnership."  Motion for Summary Judgment at 11.  Plaintiffs cite Sheridan Healthcorp, Inc. v. Amko, 993 So. 2d 167 (Fla. Dist. Ct. App. 2008), for the proposition that "[t]he fact that joint adventurers may determine to carry out the purpose of the agreement through the medium of a corporation does not change the essential nature of the relationship. . . . Thus, the existence of the corporation may not necessarily end the joint venture if its purpose was not merely to create the corporation."  993 So. 2d at 170 (quoting Donahue v. Davis, 68 So. 2d 163, 171 (Fla. 1953)).  Under Florida law, "the association of two or more persons to carry on

13

as coowners a business for profit forms a partnership, whether or not the persons intend to form a partnership."  Fla. Stat. § 620.8202(1).  "A partnership is created only where both parties contribute to the labor or capital of the enterprise, have a mutuality of interest in both profits and losses, and agree to share in the assets and liabilities of the business."  Williams v. Obstfeld, 314 F.3d 1270, 1275 (11th Cir. 2002) (quoting Dreyfuss v. Dreyfuss, 701 So. 2d 437, 439 (Fla. Dist. Ct. App.1997) (internal quotation marks omitted)).

A joint venture is a form of partnership under Florida law.  Williams, 314 F.3d at 1275.  "The essential elements of a joint venture are: (1) a community of interest in the performance of a common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained."  Chase Manhattan Mortg. Corp. v. Scott, Royce, Harris, Bryan, Barra & Jorgensen, P.A., 694 So. 2d 827, 831 (Fla. Dist. Ct. App. 1997) (citing Kislak v. Kreedian, 95 So. 2d 510, 515 (Fla.1957)).  A joint venture must arise out of a contract, either express or implied.  Vannamei Corp. v. Elite Int'l. Telecomms., Inc., 881 So. 2d 561, 562 (Fla. Dist. Ct. App. 2004).  "Such a contract is an indispensable prerequisite to the venture's existence."  Id. (quoting Kislak, 95 So. 2d at 515).  The party which alleges the existence of a joint venture, bears "the burden of both alleging and proving that an agreement or contract supports the relationship...."  Id. (quoting Kislak, 95 So. 2d at 515).  "[W]here . . . the events and transactions which form the basis of the alleged relationship are not in writing, the burden of establishing the existence of such contract, including all of its essential elements, is indeed, as it should be, a heavy and difficult one."  Id. (quoting Kislak, 95 So. 2d at 515).  "Florida

14

courts have interpreted these requirements to preclude a finding that a partnership or joint venture exists where any factor is missing." Williams, 314 F.3d at 1276 (citing Kislak, 95 So. 2d at 517; Dreyfuss, 701 So. 2d at 439; Austin v. Duval Cnty. Sch. Bd., 657 So. 2d 945, 948 (Fla. Dist. Ct. App. 1995)).

Here, Plaintiffs have merely alleged in a de facto fashion that Mr. Hartley engaged in a partnership with Mattera and van Siclen.  In the absence of a formal partnership agreement, Plaintiffs have only provided evidence that Mr. Hartley, van Siclen and Mattera served as "principals, members, managers, officers and directors" of various corporate entities.  Plaintiffs' Statement of Material Facts [DE 185] ("Plaintiffs' Facts") ¶ 3.  The mere fact that Mr. Hartley was involved in corporate entities with Mattera and van Siclen does not establish that he entered a partnership or joint venture with them.[9]  Thus, the Court is unable to conclude, from the record before the Court, that Mr. Hartley is jointly and severally liable for the actions of Mattera and van Siclen under Florida partnership law.

The Court notes, however, that Plaintiffs have included a conspiracy claim in

---

[9]     To the extent Plaintiffs argue that Mr. Hartley, van Siclen, and Mattera are liable as partners for acts committed before the Praetorian Global Fund was incorporated, the Court is unconvinced by the evidence Plaintiffs have adduced that partnership liability exists.  See Motion for Summary Judgment at 12.  Even if the investments of Plaintiffs Jerry Bayles and Dan Meadows were solicited before the Praetorian Global Fund was incorporated, this still does not establish that Mr. Hartley is jointly and severally liable as a partner for acts committed by Mattera and van Siclen after the October 13, 2010 incorporation.  See Affidavit of Dan Meadows in Support of Plaintiffs' Motion for a Preliminary Injunction [DE 23-4] ¶¶ 2, 27 (indicating that Mr. Bayles and Mr.. Meadow were solicited on July 31, 2010); Affidavit of Jerry Bayles in Support of Plaintiffs' Motion for a Preliminary Injunction [DE 23-5] ¶¶ 2, 27 (same). Plaintiffs have not provided any basis for the Court to pierce the corporate veil.

15

their Amended Complaint against all Defendants.  Am. Compl. ¶¶ 264-69.  "A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy."  Hogan v. Provident Life & Accident Ins. Co., 665 F. Supp. 2d 1273, 1285 (M.D. Fla. 2009) (quoting Charles v. Fla. Foreclosure Placement Ctr., LLC, 988 So. 2d 1157, 1159-60 (Fla. Dist. Ct. App. 2008) (internal quotation marks omitted)).

Under Florida law, "[c]onspiracy is not a separate or independent tort but is a vehicle for imputing the tortuous actions of one co-conspirator to another to establish joint and several liability."  Hoch v. Rissman, Weisberg, Barrett, 742 So. 2d 451, 460 (Fla. Dist. Ct. Ap. 1999) (citing Ford v. Rowland, 562 So. 2d 731 (Fla. Dist. Ct. App. 1990)).  "To be held liable for the acts of all co-conspirators, each co-conspirator 'need only know of the scheme and assist in it in some way.'"  Principal Life Ins. Co. v. Mosberg, No. 09-22341-CIV, 2010 WL 473042, at *6 (S.D. Fla. Feb. 5, 2010) (quoting Donofrio v. Matassini, 503 So. 2d 1278, 1281 (Fla. Dist. Ct. App. 1987)).  It is appropriate to determine whether a plaintiff has established a conspiracy sufficient to warrant joint and several liability on a motion for summary judgment.  See Time Warner Entm't/Advance-Newhouse P'ship v. Worldwide Elecs., L.C., 50 F. Supp. 2d 1288, 1301 n.13 (S.D. Fla. 1999) (finding that on plaintiff's motion for summary judgment where plaintiff pleaded, and the court found, that the defendants engaged in a conspiracy to manufacture, modify, and sell pirate decoders, joint and several liability could be imposed).  Thus, this Court may properly determine whether Plaintiffs have demonstrated that joint and several liability applies based upon their conspiracy claim.

16

Here, the undisputed facts before the Court establish that Mr. Hartley, in conjunction with Defendants Mattera and van Siclen, conspired to solicit investors to invest in various G. Power entities to capitalize The Praetorian Global Fund.  Plaintiffs' Facts ¶ 5.  Both Mr. Hartley and van Siclen were partners and directors in the Praetorian Global Fund, Ltd.  Id. ¶ 3(a).[10]  Mattera was the chairman of the advisory board.  Id.  Plaintiffs and other investors were informed that G. Power II owned Series A Preferred shares in Fisker Automotive Inc.  Id. ¶ 8. The uncontroverted[11] testimony of van Siclen is that Mr. Hartley participated in the drafting of the Private Placement Memorandum and subscription documents that were provided to the Plaintiffs which contained the false statements regarding the Fisker shares.  Id. ¶ 9 (citing excerpts from van Siclen's deposition).  Mr. Hartley, along with van Siclen, personally met with a representative of the Plaintiff 2009 Hubbard Family Trust in January 2011, a meeting wherein Mr. Hartley affirmed his partnership with van Siclen and Mattera, promoted what a great investment it was, and represented that the closing had yet to take place. Id. ¶ 13 (citing Affidavit of R.D. Hubbard, Exhibit G to Plaintiffs' Facts [DE 185-9]).  Mr. Hartley also responded to email inquiries from the Plaintiffs regarding the status of the closings.  Id. ¶¶ 16, 63-66.  Thus, the Court finds that Plaintiffs have established the

---

[10]   Mr. Hartley also admits in his Motion to Dismiss that he was a director and officer of the Praetorian Global Fund, Ltd.  Motion to Dismiss at 5 ¶ 28.

[11]   This testimony is uncontroverted because Mr. Hartley merely denies that he was involved in a partnership with Mattera and van Siclen and demands that the Plaintiffs prove these allegations.  Motion to Dismiss at 5 ¶¶ 26-27.  When opposing a motion for summary judgment, mere denials are not enough.  Matsushita, 475 U.S. at 587.  (In opposing a motion for summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial.").

existence of a conspiracy amongst the Defendants and that Mr. Hartley may be held jointly and severally liable for the actions of the Defendants.

### E. Fraud (rescission) (Count II) and Fraud (damages) (Count III).[12]

Plaintiffs move for summary judgment on their fraud claims.  Motion for Summary Judgment at 14-16.  In opposition, Mr. Hartley generally opposes summary judgment in favor of the Plaintiffs because "[t]here is no allegation by Plaintiffs that any of Defendant Hartley's actions and conduct were independent of the other Defendants." Motion to Dismiss at 5 ¶ 30.  Mr. Hartley also contends, without legal support, that "[u]nless and until the allegations of wrongdoing by the other Defendants have been proven, no liability in respect of a "partnership' or any other allegation of wrongdoing can arise as against Defendant Hartley."  Id. at 6 ¶ 32.

The Florida Supreme Court has held that: "there are four elements of fraudulent misrepresentation: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation."  Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010) (quoting Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985) (internal quotation marks omitted) (emphasis in original)).  Rather than establish that the defendant knew the

---

[12]     The Court notes that Mr. Hartley failed to respond to Plaintiff's Statement of Material Facts.  Pursuant to Local Rule 56.1, this means that "[a]ll material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record."  Local Rule 56.1(b).

statement was false, a plaintiff may also establish that "the defendant made a statement knowing he was without knowledge of its truth or falsity," Billian v. Mobil Corp., 710 So. 2d 984, 988 (Fla. Dist. Ct. App. 1998), or was made under circumstances in which the defendant should have known that the representation was false. Parker v. State of Fla. Bd. of Regents ex rel. Fla. State Univ., 724 So. 2d 163, 168 (Fla. Dist. Ct. App. 1998).

First, the Court agrees with Plaintiffs that they have established Mr. Hartley's liability for his own fraudulent misrepresentations. The undisputed record before the Court reflects that Mr. Hartley participated in drafting the Private Placement Memorandum and other subscription documents which misrepresented that G. Power II already owned $20 million Fisker Shares, when it did not in fact own any shares. Plaintiffs' Facts ¶¶ 9, 45, 56. At a minimum, as a director of Praetorian Global Fund which distributed the Private Placement Memorandum, Mr. Hartley should have been aware of whether G. Power II actually owned shares of Fisker at the time these offering documents were drafted. See id. ¶ 10. The record before the Court also establishes that Mr. Hartley represented to at least R.D. Hubbard that the investment was sound, id. ¶¶ 11, 35-38, and represented in emails to multiple Plaintiffs that the documentation for the transactions was in order and would close soon. Id. ¶¶ 16, 63-65.

In his Motion to Dismiss, Mr. Hartley ignores that Plaintiffs, in part, base their fraud claims on his own conduct. In an attempt to minimize his own actions, Mr. Hartley argues that he cannot be held liable based on the January 2011 dinner because "it took place, at its highest, in a social context, and at its lowest, in a haze of alcohol." Motion

to Dismiss at 6 ¶ 37.  He also contends, without further explanation, that the "allegations relating to the exchange of emails in May 2011 depend on a particular interpretation which Defendant Hartley denies absolutely."  Id. at 6 ¶ 38.  These unsworn denials are not sufficient to defeat a properly documented motion for summary judgment.  Kaloe Shipping Co. Ltd. v. Goltens Serv. Co., Inc., 778 F. Supp. 2d 1346, 1354 (S.D. Fla. 2011) ("Resolving this issue requires the Court to examine the law on the effect of a failure to rebut or offer any evidence creating an issue of fact, and whether relying simply on an answer denying an allegation in Plaintiff's Complaint is or is not adequate to create an issue of fact. Case law shows that it is not. See SEC v. Simmons, 241 Fed. Appx. 660, 664 (11th Cir. 2007) ('A general denial of Plaintiff's claims contained in an answer or another pleading is not sufficient.') (citations omitted); Maxi–Taxi of Fla., Inc. v. Lee County Port Authority, 301 Fed. Appx. 881 (11th Cir. 2008) ('It is well settled that "after adequate time for discovery and upon motion, [summary judgment is appropriate] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.... Where a nonmoving party fails to present such evidence, " there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."') (citations omitted). Moreover, '[t]o controvert a proper motion for summary judgment a party may not rest upon allegations and denials in his pleadings; he must set forth specific facts showing a genuine issue

for trial.'  Garcia v. Am. Marine Corp., 432 F.2d 6 (5th Cir.1970).").[13]

The Court also disagrees with Mr. Hartley's protestations that he cannot be held liable for the conduct of Mattera and van Siclen.  See Motion to Dismiss at 6 ¶ 32.  Mr. Hartley premises this argument on the fact that because final judgments were entered against Mattera and van Siclen "all the evidence brought in support of the allegations against the other Defendants can no longer be tested at trial."  Id. at 6 ¶ 33.  Mr. Hartley cites no case law for this unique argument and the Court is aware of none. Furthermore, the Court notes that the final judgments were consented to by Mattera and van Siclen and entered absent any finding of liability against Mattera and van Siclen.  See Final Judgment in Favor of Plaintiffs and Against John A. Mattera [DE 155]; Final Judgment in Favor of Plaintiffs and Against Defendant Bradford van Siclen [DE 180].  Thus, there has been no judicial determination regarding Mattera and van Siclen's liability which would preclude a finding of liability against their co-conspirator, Mr. Hartley.  Finally, for the reasons discussed in Subsection D above, the Court finds that Mr. Hartley may be held liable for the fraudulent misrepresentations of his co-conspirators, Matter and van Siclen, which led to Plaintiffs' collective loss of $4.25

---

[13]      As previously noted, in a separately entered order, the Court grants Plaintiffs' Motion to Strike the Untimely Affidavit of Mr. Hartley for failure to comply with Local Rule 7.1(c).  The time for Mr. Hartley to produce an affidavit contesting Plaintiffs' claims was when he responded to Plaintiffs' Motion for Summary Judgment.  In any event, the Court notes that the Affidavit, even if accepted, would not have defeated Plaintiffs' Motion for Summary Judgment because the Court does not find Mr. Hartley's denial of any knowledge of van Siclen and Mattera's wrongdoing credible.  See Affidavit of John Hartley [DE 218] ¶¶ 18-19.

million.[14]

### F. Civil Theft in Violation of Florida Statutes § 772.11 (Count X).

Plaintiffs next move for summary judgment on their claim brought pursuant to Florida's civil theft statute, Fla. Stat. § 772.11.  Motion for Summary Judgment at 16-18. This claim is premised on Plaintiffs' argument that Mr. Hartley is jointly and severally liable for the actions of Mattera and van Siclen.  Id. at 17.  Mr. Hartley, while denying that he can be held jointly and severally liable for the actions of his co-defendants, "demands that Plaintiffs prove the existence of the 'partnership.'"  Motion to Dismiss at 5 ¶ 27.

Florida Statutes § 772.11 provides that "[a]ny person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts."  Fla. Stat. § 772.11(1).  Florida Statutes § 812.014 in turn provides that "[a] person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) [d]eprive the other person of a right to the property or a benefit from the property [or] (b) [a]ppropriate the property to his or her own use or to the use of any person not entitled to the use of the property."  Fla. Stat. § 812.012(1).  "Florida law

---

[14]     As discussed in Subsection D, supra, the Court disagrees with Plaintiffs' argument that Mr. Hartley may be held liable for the actions of Mattera and van Siclen under a partnership theory of joint and several liability.

22

creates a civil cause of action for violations of certain criminal theft statutes that are proven by a preponderance of the evidence. . . . Several different actions may constitute theft under Florida's omnibus criminal theft statute, including, for example, theft by false pretenses and embezzlement."  Bufman Org. v. F.D.I.C., 82 F.3d 1020, 1028-29 (11th Cir. 1996).

Plaintiffs argue that Mr. Hartley should be found liable for Materra and van Siclen's conversion or embezzlement of Plaintiffs' moneys.  Motion for Summary Judgment at 17.  The Court agrees.  "'Conversion' occurs when a person who has a right to possession of property demands its return and the demand is not or cannot be met."  Pain Care First of Orlando, LLC v. Edwards, 84 So. 3d 351, 354 (Fla. Dist. Ct. App. 2012) (quoting Pearson v. Ford Motor Co., 694 So. 2d 61 (Fla. Dist. Ct. App. 1997)).  Embezzlement occurs "whereby [a] defendant lawfully obtains possession of the plaintiff's funds and thereafter converts said funds to his own use."  Escudero v. Hasbun, 689 So. 2d 1144, 1147 (Fla. Dist. Ct. App. 1997) (citations and quotations omitted).

Although Plaintiffs have not asserted a separate cause of action for conversion against Mr. Hartley, see Am. Compl. ¶¶ 216-225, the Court finds that he may be held liable for the conversion and embezzlement committed by his co-conspirators, Mattera and van Siclen under Florida's Civil Theft Statute.  Florida Statutes § 812.012 defines "taking or exercising control over property" as "[c]onduct previously known as stealing; larceny; purloining; abstracting; *embezzlement*; misapplication; misappropriation; *conversion*; or obtaining money or property by false pretenses, fraud, or deception."

23

Fla. Stat. § 812.012(1)(d) (emphasis added).  In <u>Masvidal v. Ochoa</u>, a case cited by Plaintiffs, the Florida District Court of Appeal held that where the evidence demonstrated "classic embezzlement by the defendant of an escrow fund set up under the subscription agreement between the parties. That is, the defendant lawfully obtained possession of the plaintiff's funds to set up the escrow fund and thereafter converted the funds for his own use," liability for civil theft had been established.  505 So. 2d 555, 556 (Fla. Dist. Ct. App. 1987).

Here, the record before the Court undisputedly establishes that Mattera and van Siclen converted and/or embezzled Plaintiffs' funds.  Although Plaintiffs never received the promised shares of Fisker, after wiring their funds to the escrow agent, FAST, their moneys were released to accounts controlled by Mattera, with a 2% transaction fee retained by the escrow agent.  Plaintiffs' Facts ¶ 57 (citing excerpts of the Deposition of John Ray Arnold [DE 146-7]).  Defendant van Siclen later received $420,000 for his role in the scheme, ($20,000 a month for a period of 21 months).  <u>Id.</u> ¶ 58 (citing the Deposition of John Ray Arnold [DE 146-1] at 94). Praetorian Services Ltd, which Mr. Hartley admits he was a director and officer of, received at least $100,000.  <u>Id.</u> ¶ 59 (citing Exhibit 133 to the Affidavit of SEC Account Richard Needham [DE 36-1] at 82; <u>see also</u> Motion to Dismiss at 5 ¶ 28.  Plaintiffs' evidence that entities controlled by Mr. Hartley received money from the escrow accounts is unrebutted.  Moreover, because the Court has already found that Mr. Hartley may be held jointly and severally liable for the actions of his co-conspirators Mattera and van Siclen, he is liable for the conversion

and/or embezzlement of Plaintiffs' moneys.[15]

## G. Section 10(b) and 10b(5)(a), (b), and (c) of the Securities Exchange Act of 1934 (Count I).

Finally, Plaintiffs move for summary judgment on their claim brought pursuant to the Securities Exchange Act of 1984.  Motion for Summary Judgment at 19-24. Plaintiffs contend that Mr. Hartley is liable for violations of the Securities Exchange Act based upon his own actions and jointly and severally based upon actions of van Siclen and Mattera.  See id.  While Mr. Hartley generally opposes Plaintiffs' Motion for Summary Judgment, he did not specifically address Count I and denies that any of the causes of action against him are based upon his own conduct.  Motion to Dismiss at 5 ¶ 30.  For the reasons discussed below, the Court concludes that Plaintiffs are also entitled to summary judgment on this claim.

Section 10(b) of the Securities Exchange Act makes it "unlawful for any person ... [t]o use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j. Rule 10b-5, which implements this provision, forbids the use, "in connection with the purchase or sale of any security," of "any device, scheme, or artifice to defraud" or any other "act, practice, or course of business" that "operates ... as a fraud or deceit." 17 CFR § 240.10b-5.  "In a Rule 10b-5 securities fraud action, the plaintiff must prove (1) a material

---

[15]     Because the Court finds that Plaintiffs have established Mr. Hartley's liability for civil theft due to conversion and/or embezzlement, the Court need not reach Plaintiffs' argument that he is liable for civil theft under a theory of fraud or false pretenses.  See Motion for Summary Judgment at 18.

misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation." Hubbard v. BankAtlantic Bancorp, Inc., 688 F.3d 713, 725 (11th Cir. 2012) (citing Ledford v. Peeples, 657 F.3d 1222, 1248 (11th Cir. 2011)).  "In its role enforcing the Act, the SEC has consistently adopted a broad reading of the phrase 'in connection with the purchase or sale of any security.'  It has maintained that a broker who accepts payment for securities that he never intends to deliver, or who sells customer securities with intent to misappropriate the proceeds, violates § 10(b) and Rule 10b-5." SEC v. Zandford , 535 U.S. 813, 819-20 (2002).  Scienter is  "a mental state embracing intent to deceive, manipulate, or defraud." Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309, 1323 (2011).  Scienter may also be established by deliberate recklessness. Findwhat Investor Grp. V. Findwhat.com, 658 F.3d 1282, 1299 (11th Cir. 2011).

The Court finds that Plaintiffs have established Mr. Hartley's primary liability on their Section 10b-5 claim.  As an officer and director of the Praetorian Global Fund which issued the Primary Placement Memorandum and other subscription documents, Mr. Hartley directly participated in the drafting of these offering documents.  Plaintiffs' Facts ¶ 9 (citing excerpts from van Siclen's deposition).  Mr. Hartley, along with van Siclen, also personally met with a representative of the Plaintiff 2009 Hubbard Family Trust in January 2011, a meeting wherein Mr. Hartley affirmed his partnership with van Siclen and Mattera, promoted what a great investment it was, and represented that the closing had yet to take place.  Id. ¶ 13 (citing Affidavit of R.D. Hubbard, Exhibit G to Plaintiffs' Facts [DE 185-9]).  Mr. Hartley also responded to email inquiries from the

26

Plaintiffs regarding the status of the closings, ensuring the Plaintiffs that the closings would take place.  Id. ¶¶ 16, 63-66.  This record indisputably establishes that a material misrepresentation, that G. Power II already owned $20 million in Fisker Series A-1 Preferred shares, was contained in the Private Placement Memorandum and other subscription documents because G. Power II did not own any such shares.  Id. ¶¶ 44-48, 56.  This material misrepresentation was related to the sale of securities.  See Zandford , 535 U.S. at 819-20.

Plaintiffs have also established that they relied upon this misrepresentation and suffered the collective loss of $4.25 million which was wired to Defendant FAST and subsequently converted.  Id. ¶¶ 51-54.  The Plaintiffs have also undisputedly established Mr. Hartley's scienter.  As a director and officer of the Praetorian Global Fund who participated in the drafting of the Private Placement Memorandum and other subscription documents, Mr. Hartley's representation that G. Power II owned Fisker shares was either intentionally fraudulent or extremely reckless.  Mr. Hartley should have known whether G. Power II owned Fisker shares before he signed off on such a representation in the offering documents or continued to represent the soundness of the investment to Plaintiffs.  Accordingly, Plaintiffs are entitled to summary judgment on this claim because they have established Mr. Hartley's primary liability for fraudulent misrepresentations or omissions.[16]

---

[16]     The Court does not reach Plaintiffs' argument that Mr. Hartley is liable for the misrepresentations of Mattera and van Siclen under a partnership theory.  However, consistent with Subsection D supra, the Court expresses its doubt regarding Plaintiffs' partnership argument.

### H. Hartley's Motion to Dismiss.

When responding to Plaintiffs' Motion for Summary Judgment, Mr. Hartley styled his response as a "Counter Motion for Dismissal of the Amended Complaint." Although this motion was received by the Court on August 3, 2012, well after the July 12, 2012 dispositive motions deadline, see DE 160, the Court has nonetheless considered the Motion to Dismiss and finds it without merit. The Court notes that Mr. Hartley chose to file an answer in this matter rather than filing a motion to dismiss. See DE 152, 191. Thus the time for Mr. Hartley to challenge the sufficiency of Plaintiffs' pleading has long since passed. See Fed. R. Civ. P. 12(b). Construing the Motion to Dismiss as a motion for summary judgment, however, the Court finds that it falls woefully short of the requirements of Federal Rule of Civil Procedure 56 and fails to comply with Local Rule 56.1. See Springs v. Clement, 202 F.R.D. 387, 395 (E.D.N.Y. 2001) (denying *pro se* motion for summary judgment in part due to failure to comply with rules of civil procedure and local rule governing summary judgment).

Even if Mr. Hartley had complied with the procedural requirements of a motion for summary judgment, his motion would still fail on the merits. Mr. Hartley premises his arguments in favor of dismissal upon (1) his subjective belief that he cannot be held liable for the acts of his co-defendants; (2) his mere denial of Plaintiffs' allegations against him; (3) his unsupported notion that the acts of his co-defendants "can no longer be tested at trial;" and (4) his contention that Plaintiffs should be held to a higher standard of proof. See generally Motion to Dismiss. These frivolous and unsupported arguments do not form the basis for summary judgment in Mr. Hartley's favor. Accordingly, the Court will deny his Motion to Dismiss.

28

III. CONCLUSION

Based on the foregoing it is **ORDERED AND ADJUDGED** as follows:

1.   Plaintiffs' Motion for Summary Judgment as to Defendant John Hartley [DE 184]

is **GRANTED**;

2.   Defendant Hartley's Cross Motion for Dismissal of the Amended Complaint [DE

209] is **DENIED**;

3.   The Court will enter a separate final judgment against Defendant John Hartley.

Plaintiffs shall submit a proposed final judgment to the Court within three

business days of this order; and

4.   Plaintiffs are directed to serve a copy of this Order upon Defendant John Hartley.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 12th day of September, 2012.

_____
JAMES I. COHN
United States District Judge

Copies provided to counsel of record and pro se parties via CM/ECF.